---

TODD LYNN THORUD,

        **Plaintiff,**

        **v.**                                    **Case No. 26-CV-840**

EMILY DAVIDSON,
CCE JANE/JOHN DOES 1–4,
CINDY O'DONNELL,
BRIAN CAHAK,
EMIL TONEY,
LT. ERIC HENSLIN,
SECURITY SUPERVISOR JOHN DOE 1,
KELLY PELKY,
RN W. BORGEN,
ANGEL HOFFMAN,
JULIE LUDWIG,
TODD GILLINGHAM,
INMATE COMPLAINT EXAMINERS
JANE/JOHN DOES 1–4,
SGT. NIEBAUER,
SGT. PHILLIPS, and
TAMI STAEHLER,

        **Defendants.**

---

## SCREENING ORDER

---

Plaintiff Todd Lynn Thorud, who is currently serving a state prison sentence at Oshkosh Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. On June 1, 2026, the court screened the complaint and after concluding it failed to state a claim, gave Plaintiff the opportunity to file an amended complaint. Plaintiff filed an amended complaint on June 18, 2026. The court will screen the amended complaint as required by 28 U.S.C. § 1915A.

The court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, I must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

2

The allegations of the amended complaint are substantively identical to the allegations in the original complaint. According to Plaintiff, on March 14, 2025, at approximately 8:15 a.m., Plaintiff was attacked by another inmate. He sustained a deep laceration to his left eyebrow area. Plaintiff asserts that Warden Brian Cahak, Security Director Emil Toney, and Administrative Captain Eric Henslin are directly responsible for the safety of the inmate population. Plaintiff asserts that, after the assault, Plaintiff repeatedly corresponded with Warden Cahak, Security Director Toney, and Administrative Captain Henslin and asked them to make changes to protect inmates, but they never responded to or acknowledged his correspondence. Plaintiff was subsequently assaulted by another inmate on April 19, 2024. Am. Compl. at 7, Dkt. No. 8.

After the April 19, 2024, assault, Plaintiff notified Sgt. Niebauer and Sgt. Phillips about the incident, and they told Security Supervisor John Doe 1 about it. Plaintiff asserts that Sgt. Niebauer, Sgt. Phillips, and Security Supervisor John Doe 1 did not immediately take Plaintiff to the Health Services Unit (HSU) for treatment. Instead, Plaintiff sat at a dayroom table. Plaintiff alleges that he had pain in his head, neck, and lower back, he felt like he experienced whiplash from the force of the blow to his head, he had ringing in his ears, and he felt slightly nauseous and dizzy. Once he was taken to HSU, he was not escorted in a wheelchair, which violated prison policy. Plaintiff asserts that walking caused him more spinal pain and that he suffered bouts of dizziness and nausea and had to take breaks to let the dizziness and nausea pass. *Id.* at 9–10.

When Plaintiff arrived at HSU, Sgt. Phillips photographed Plaintiff's injuries and sent Plaintiff to the waiting room. Plaintiff asserts that Sgt. Phillips and HSU staff Jane/John Does 1–10 failed to provide immediate care to him upon his arrival to HSU. Plaintiff maintains that he should have been sent to the emergency room for assessment and evaluation of his facial/head trauma in accordance with prison policy. *Id.* at 11–12.

3

After the incident, Plaintiff learned that he had been charged a medical copay for his treatment. Plaintiff wrote to HSU Manager Kelly Pelky requesting a refund. Plaintiff filed an inmate complaint about the incident, but Inmate Complaint Examiner Todd Gillingham did not investigate Plaintiff's claim. Plaintiff appealed, and Correctional Complaint Examiners Jane/John Does 1–4 "rubber stamped" the complaint. Cindy O'Donnell reversed the dismissal. Plaintiff wrote to HSU Manger Pelky requesting that she correct the record. Assistant HSU Manager W. Borgen responded that Plaintiff received treatment because he had been in a fight and requested to go to HSU. HSU Manager Pelky refused to correct the record, and Nurse Coordinator Julie Ludwig stated, "no assault." *Id.* at 13–15.

Plaintiff filed an inmate complaint after the April 19, 2024, assault, but the complaint was dismissed by Corrections Complaint Examiner Emily Davidson and Cindy O'Donnell. *Id.* at 8. Plaintiff reported the inmate attack to Warden Cahak, Deputy Warden Tami Staehler, Security Director Toney, and Administrative Captain Henslin but did not receive an immediate response. Four or five months later, Deputy Warden Staehler told Plaintiff that Oshkosh Correctional Institution would not refer the assault to the Oshkosh Police Department or the District Attorney's Office. *Id.* at 17.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Plaintiff alleges that CCE Davidson, OOS O'Donnell, Warden Cahak, Deputy Warden Staehler, Security Supervisor John Doe 1, and Administrative Captain Henslin failed to protect

4

him from the inmate attacks on March 14 and April 19, 2025. The Eighth Amendment prohibits "cruel and unusual punishments" and imposes a duty on jail officials to ensure that inmates receive adequate food, clothing, shelter, and medical care and to take reasonable measures to guarantee an inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see* U.S. Const. amend. VIII. Prison officials have a duty to protect inmates from violence caused by other inmates when they are aware that the inmate faced "a substantial risk of serious harm" and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see also Pierson v. Hartley*, 391 F.3d 898, 903–04 (7th Cir. 2004). Damages for "a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence." *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). The complaint must contain allegations that the officials were aware of a specific, impending, and substantial threat to the plaintiff's safety. *See Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). The amended complaint does not contain any allegations to suggest that these defendants were aware of any substantial risk of serious harm to Plaintiff or any specific threat to Plaintiff's safety before either inmate assault. Therefore, Plaintiff fails to state a failure to protect claim against CCE Davidson, OOS O'Donnell, Warden Cahak, Deputy Warden Staehler, Security Supervisor John Doe 1, and Administrative Captain Henslin.

Plaintiff asserts that Sgt. Niebauer, Sgt. Phillips, and Security Supervisor John Doe 1 did not immediately take him to HSU for treatment and that Sgt. Phillips and nursing staff Jane/John Does 1–10 did not provide timely care for his injuries. A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. *Cesal v. Moats*, 851 F.3d 714, 720–21 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). To state a claim, a plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Id.* at 721 (quoting *Perez v. Fenoglio*, 792 F.3d 768, 776

5

(7th Cir. 2015)). An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the inmate's health. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 836–38 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). "Negligence, gross negligence, or even 'recklessness' as that term is used in tort cases, is not enough." *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (internal quotation marks and citation omitted).

Plaintiff asserts that he did not receive immediate care for his injuries. "But the constitution does not mandate immediate care." *Moore v. Williams*, 835 F. App'x 143, 145 (7th Cir. 2021) (citing *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009)). Plaintiff alleges that he had pain in his head, neck, and lower back, he felt like he experienced whiplash from the force of the blow to his head, he had ringing in his ears, and he felt slightly nauseous and dizzy. According to the amended complaint, Plaintiff notified Sgt. Niebauer, Sgt. Phillips, and Security Supervisor John Doe 1 of his injuries and he sat in the dayroom before being escorted to HSU. But Plaintiff does not allege how long he sat in the dayroom. Once Plaintiff arrived at HSU, Sgt. Phillips photographed Plaintiff's injuries and had Plaintiff sit in the waiting room. Plaintiff asserts that he was "aghast" that he was denied care upon his arrival at HSU and that HSU staff should have assessed and evaluated him before sending him to the waiting area. Am. Compl. at 11. But Plaintiff does not allege that he never received care for his injuries or that he suffered prolonged or more severe symptoms as a result of any delay in treatment. In short, the amended complaint contains no allegations from which the court can infer that Sgt. Niebauer, Sgt. Phillips, Security Supervisor John Doe 1, and nursing staff Jane/John Does 1–10 knew that a delay in treatment

6

would needlessly and substantially prolong a dangerous medical condition or that they acted with the requisite bad intent in delaying medical care. Accordingly, Plaintiff fails to state a claim on this basis.

Plaintiff also asserts that when he was sent to HSU, he was not escorted in a wheelchair and that HSU nursing staff Jane/John Does 1–10 and HSU Manager Pelky failed to send him to the emergency room after suffering facial/head trauma in violation of prison and BHS policy. But the Constitution does not require compliance with state laws or policies. *See Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020). Plaintiff alleges that being forced to walk to HSU without a wheelchair escort resulted in "pain/agony" and that Plaintiff asserts that he suffered bouts of dizziness and nausea and had to take breaks to let the dizziness and nausea pass. Am. Compl. at 10. Although Plaintiff contends that he could have fallen, passed out, been injured, or died, he does not allege that he suffered any injury by walking to HSU. The amended complaint does not contain allegations suggesting that Plaintiff required a wheelchair escort or that his injuries necessitated that he be sent to a hospital's emergency department. In short, Plaintiff fails to state a claim on this basis.

Plaintiff asserts that nursing staff Jane/John Does 1–10 improperly charged him a medical copay after being assaulted and receiving care in HSU. Again, while the defendants' decision to charge a copay may have violated prison policy, the Constitution does not require compliance with state laws or policies. *See Pulera*, 966 F.3d at 551.

Plaintiff claims that Inmate Complaint Examiner Supervisor Todd Gillingham, Inmate Complaint Examiners Jane/John Does 1–4, Correctional Complaint Examiner Emily Davidson, Correctional Complaint Examiner Jane/John Does 1–4, and Warden Cahak mishandled his grievances. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*,

7

635 F.3d 950, 953 (7th Cir. 2011). As a result, any allegations of mishandling of an inmate's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim. Because these defendants did not cause the underlying conduct Plaintiff complained about in his grievances, he has failed to state a claim against them.

Plaintiff asserts that HSU management violated his rights when they failed to correct the official record in which HSU management indicated that Plaintiff requested to be seen by HSU nursing staff after being injured in a fight. He also asserts that administration violated his rights by refusing to press charges against his attacker. To state a Fourteenth Amendment due process claim, a plaintiff must allege that (1) he was deprived of a constitutionally protected liberty interest and (2) the procedures he was afforded were constitutionally deficient. *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). In this case, Plaintiff has not alleged a protected liberty interest sufficient to invoke due process protections. Therefore, he fails to state a Fourteenth Amendment due process claim.

Plaintiff asserts that HSU management used depraved language in their correspondence. HSU management indicated that Plaintiff was seen by HSU after being injured in a fight. Plaintiff asserts that this statement is a "blatant lie and has no factual basis." Am. Compl. at 14. "[T]he Constitution does not forbid libel and slander." *Davis v. City of Chicago*, 53 F.3d 801, 804 (7th Cir. 1995) (citations omitted). Any state law defamation claim would have to be brought in state court.

This plaintiff has provided no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) (quoting *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988), *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319 (1989)). Accordingly, for the reasons explained in the original screening order and this order, Plaintiff fails to state a claim upon which relief can be granted.

8

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) **for failure to state a claim**.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Green Bay, Wisconsin this 25th day of June, 2026.

William C. Griesbach
United States District Judge

This order and the judgment to follow are final.  Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment.  *See* Fed. R. App. P. 3, 4.  This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline.  *See* Fed. R. App. P. 4(a)(5)(A).  If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome.  If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court.  *See* Fed. R. App. P. 24(a)(1).  Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious.  *See* 28 U.S.C. § 1915(g).  If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury.  *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b).  Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment.  Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment.  The court cannot extend these deadlines.  *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.